NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYDIA BETANCOURT,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., Inc., JOHN DOES 1-10, ABC CORP. 1-10, and DEF CORP. 1-10 (names being fictitious),<br><br>Defendants. | **OPINION**<br><br>Civ. No. 16-07255 (WHW)(CLW) |

**Walls, Senior District Judge**

This matter involves a slip and fall accident involving Plaintiff Lydia Betancourt that occurred in a store of Defendant Home Depot. Currently before the Court is Defendant Home Depot's motion for summary judgment under F.R.C.P. 56. Decided without oral argument under Local Rule 78, the motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of a fall that occurred in the checkout lane of Home Depot on July 26, 2015. Def's. Br. at 2.[1] After selecting her products, Plaintiff paid for them in cash at Register #5. *Id.* at 2; Pl's. CSMF ¶ 2. Customers in front of Plaintiff successfully purchased their products

---

[1] Defendant failed to include a Statement of Material Facts Not in Dispute as required by L. R. Civ. P. 56.1. Plaintiff accordingly requested that this Court deny the motion for failure to comply with the local rules, and provided a Counterstatement of Material Facts. ECF No. 22-14. Defendant then set out enumerated facts in its reply brief, but failed to respond to Plaintiff's statement of facts by admitting or denying. Defendant's repeated noncompliance has made it difficult to discern what facts are and are not in dispute. This Court will accordingly deem facts undisputed when they are put forth by a party and supported by factual evidence and not specifically disputed by the opposing party.

1

and exited the store without incident, and Plaintiff did not observe any foreign substance on the floor or witness anyone spill liquid on the floor near the register. Def's. Br. at 2.

Plaintiff then completed her transaction, but fell as she attempted to exit the register aisle and leave the store. Def's. Br. at 2; Pl's. CSMF ¶ 2. Plaintiff then motioned to the cashier, Ms. Robinson, and pointed to the area on the floor on which she had fallen. Pl's CSMF ¶ 5.

Ms. Robinson then called the Assistant Store Manager Fabio Vaca. Def's. SMF ¶ 22. Mr. Vaca came out to a desk near the store's entrance and called Plaintiff to go to see him. Mr. Vaca did not come to the register aisle at that time, and an employee mopped the area shortly after the fall but before Mr. Vaca came to inspect it. Pl's. Br. at 2; Pl's. CSMF ¶ 10. Although store policy requires employees to close a "register gate" in the event of a fall near a register to prohibit other customers from using the register, the gate was not closed after Plaintiff's fall and the cashier continued to ring out customers on Register #5. Pl's. CSMF ¶¶ 20–21.

Mr. Vaca then spoke with Plaintiff and filled out a Customer Incident Statement describing Plaintiff's fall. Pl's. Counterstatement of Mat. Facts ¶ 11. The form indicates that Plaintiff slipped and injured herself, but does not say that the slip was caused by a foreign substance. Customer Incident Statement, ECF No. 22-4. The Customer Incident Statement was filled out by Vaca rather than Plaintiff, and was not signed by either of them. Def's. SMF ¶ 24; Pl's. CSMF ¶ 11.

After completing the form, Vaca inspected the area in which Plaintiff fell. Def's. SMF ¶ 27; Pl's. CSMF ¶ 23. According to Vaca, he did not observe any substance on the floor at the location of the fall. Def's. SMF ¶ 27.

There are no set procedures of timing for cleaning the Home Depot store. Instead, employees are instructed to address specific instances if they see them. Def's. SMF ¶ 28; Pl's.

CSMF ¶ 15. Defendant also is under contract with a third-party cleaning service that remains on site from 5 or 6:00 in the morning until 4 or 5:00 in the evening to sweep, mop, and pick up loose items from the floor. Def's. SMF ¶ 29; Pl's. CSMF ¶ 16. Mopping and sweeping takes place before 10:00 am. Pl's. CSMF ¶ 16; Dep. of Fabio Vaca, 18-21–22, ECF No. 22-2.

According to Plaintiff, the fall occurred because she slipped on a pink oily substance on the floor near the register. Pl's. Opp. at 1. Plaintiff contends that she observed the substance on the floor immediately after she fell, and also observed the substance on the bottom of her shoe. *Id.* She described quarter-sized spots of the substance on the floor near the register, and states that the substance appeared to have come from leakage or spillage from a product sold by Defendant. *Id.* Plaintiff contends that when Mr. Vaca took her information for the Customer Incident Statement, she informed him that she slipped on the oily substance. *Id.* at 3. Plaintiff acknowledges that she underwent a knee surgery in 1995, but maintains that she did not mention her surgery to the cashier after she fell. *Id.* at 2; Pl's. CSMF ¶ 28.

Defendant has a different account of the incident. According to Defendant, Plaintiff informed the register associate that she slipped and fell as a result of an earlier knee surgery. Def's. SMF ¶ 10. Defendant states that while Plaintiff informed Mr. Vaca that she slipped and fell, she never told him that there was any substance on the floor. *Id.* ¶ 26.[2] Defendant maintains that Plaintiff did not even mention an oily pink substance for almost two years following the incident, raising the issue for the first time in fact discovery of this litigation. Def's. Br. at 11–12.

Although a video recording system captured the area in question throughout the day, only three and a half minutes of video involving the incident remain. Pl's. CSMF ¶ 27. In a letter from

---

[2] Defendant does not address Plaintiff's claim that the employee failed to close the register gate as required by company policy and that a member of the cleaning staff mopped the area after the incident and before Vaca came to inspect it.

Defendant's counsel dated August 14, 2017, Defendant stated that it did not believe that it had an obligation to retain any footage because of Plaintiff's admission immediately after the incident that she fell because her leg gave out due to recent surgery. Letter from Grant C. Wright to Marisa Dominguez, Aug 14, 2017, Pl's. Ex. F, ECF No. 22-6.

On January 25, 2016, Plaintiff brought suit in Superior Court of New Jersey asserting negligence and nuisance. Compl., Not. of Removal. Ex. A, ECF No. 1-1. Defendant removed to this Court October 14, 2015. Not. of Removal. The parties engaged in discovery, and on August 21, 2017, Defendant moved for summary judgment. ECF No. 17. Plaintiff filed a response November 18, and Defendant replied on November 25.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by

"citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott,* 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

"To prevail on a claim of negligence a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." *Fernandes v. DAR Dev. Corp.*, 222 N.J. 390, 403–04 (2015) (citing *Townsend v. Pierre*, 221 N.J. 36, 51 (2015)). Under the ordinary standard of care, one must "take reasonable precautions to prevent the occurrence of foreseeable harms to others." *Id.* (quoting *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)). However, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003). This requires that business owners "discover and eliminate dangerous conditions, . . . maintain the premises in safe conditions, and . . . avoid creating conditions that would render the premises unsafe." *Id.* (citing *O'Shea v. K. Mart Corp.*, 304 N.J. Super. 489, 492–93 (App. Div. 1997)).

Defendant argues that Plaintiff has failed to produce evidence of two elements of its affirmative case. First, Defendant argues that Plaintiff has no evidence that Defendant had notice of any dangerous condition. Second, Defendant argues that there is no evidence that its actions caused Plaintiff's injury.

Defendant also argues that Plaintiff's "self-serving allegations" are insufficient to show that there was any pink oily substance on the ground on the day in question. Def's. Br. at 11.

### a. Actual or constructive notice

Plaintiff raises two arguments as to how she has demonstrated that Defendant breached its duty of care. First, Plaintiff argues that she is entitled to an inference of negligence under the "mode of operations rule." Pl's. Br. at 8. Second, Plaintiff argues that even without an inference of negligence, Defendant had constructive notice of the condition that led to the fall. *Id.* at 15.

#### i. The mode of operations rule does not apply.

Ordinarily, to prove that a defendant business breached its duty of care, a plaintiff must prove that the defendant had actual or constructive notice of the dangerous condition that caused his injuries. *Nisivoccia*, 175 N.J. at 563. However, New Jersey courts have recognized a principle known as the "mode of operation" doctrine in personal injury actions against businesses whose operations involve customer self-service. *Prioleau v. Kentucky Fried Chicken, Inc.*, 223 N.J. 245, 248 (2015).

When applicable, the mode of operations rule relieves the plaintiff of the burden of proving actual or constructive notice of the dangerous condition. *Id.* at 263. Further, the rule "gives rise 'to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed.'" *Id.* (quoting *Nisivoccia*, 175 N.J. at 564–65) (internal quotations omitted). Because the mode of operation rule "substantially alters the ordinary allocation of the burdens between the parties," the rule has been limited to self-service businesses and applies only "when there is a nexus between self-service components of the defendant's business and the risk of injury in the area where the accident occurred." *Prioleau*,

223 N.J. at 262–63; *see id.* (providing background of mode of operation rule and emphasizing its limited scope).

Plaintiff argues that the mode of operation rule applies because Defendant's business is inherently self-service, and because the products sold at Home Depot are regularly opened and tested within the confines of the store. Plaintiff contends that the facts give rise to an inference that the substance came from a product inside the store. Pl's. Br. at 13–14.

Plaintiff's argument is rejected because she has failed to introduce any evidence about the nature of Defendant's business, the types of products that it sells, or whether or not customers open products within the store. Plaintiff has not introduced evidence about what the "pink oily" substance could have been and has not attempted to identify any Home Depot products matching its color or consistency.

Plaintiff argues that "there is no indication that the spill came from an outside source," relying on *Colon v. Toys R' Us*, On appeal from the Superior Court of New Jersey, Docket No. L-0952-14, 2017 WL 1166445 (N.J Super. App. Div. Mar. 29, 2017). This argument improperly seeks to place the burden on Defendant to prove that the mode of operations rule does not apply. In *Colon*, the plaintiff slipped on liquid near the checkout line of a toy store. The plaintiff there argued that the liquid may have been bubble blowing liquid sold in the store, or a drink spilled by a customer that had been purchased elsewhere. The court held that the mode of operation rule did not apply because "plaintiff ha[d] failed to establish any nexus between the liquid she alleges caused her fall and defendant's self-service facility," which sold soda and ice cream. *Id.* at *3. The court did not require the defendant to show that the liquid came from outside the store, but rather held that plaintiff had failed to meet her burden to demonstrate a nexus between the hazard and the self-service aspect of the business.

*Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559 (2016) is instructive. There, the court found that the mode of operation rule applied to a slip and fall that occurred, as here, in the checkout line. There, the defendant business was a grocery store, and the plaintiff had fallen on a grape. The court held that the mode of operation rule applied because the grapes were packaged in open and air-vented bags that "invited spillage," and it was therefore foreseeable that loose grapes would fall to the ground in areas in which customers were handling goods. *Id.* at 565–66. The "mode of operation" that allowed the inference of negligence was the use of the vented bags in a self-service business. Similarly, the court held in *O'Shea v. K Mart Corp.*, 304 N. J. Super. 489, 495 (App. Div. 1997) that stacking heavy golf bags on top of one another for customer self-service was a "mode of operation" that established an inference of negligence the event of an injury. In *Craggan v. IKEA USA*, 332 N.J. Super. 53 (App. Div. 2000), negligence was inferred because the defendant provided string to customers for them to tie furniture to their cars, causing plaintiff to trip over the string and injure himself. In contrast, there is no evidence here about the specific mode of operation that would make the dangerous condition – spillage near the checkout register – foreseeable.

Plaintiff is not entitled to an inference of negligence under the mode of operation rule.

### ii. A rational juror could find that defendant had constructive notice of a dangerous condition.

Plaintiff cannot avail herself of the mode of operations rule and consequently must demonstrate that Defendant had actual or constructive notice of the dangerous condition. *Bozza v. Vornado, Inc.*, 42 N.J. 355, 359 (1964) ("[A] proprietor is liable for injuries to an invitee if he actually knew of the dangerous condition or if the condition had existed for such a length of time that he should have known of its presence."). "A defendant has constructive knowledge [of a dangerous condition] when the condition existed 'for such a length of time as reasonably to have

resulted in knowledge and correction had the defendant been reasonably diligent.'" *Bolchune v. Shop-Rite Supermarkets, Inc.*, On appeal from Superior Court of New Jersey, Docket No. L-8536-11, 2016 WL 4699172, at *4 (N.J. Super. App. Div. Sept. 8, 2016). A plaintiff may introduce direct testimony as to the length of time that the hazard existed, but constructive notice may also be inferred from circumstantial evidence such as the characteristics of the dangerous condition. *Id.*; *see Tua v. Modern Homes, Inc.*, 64 N.J. Super. 211, 220 (App. Div. 1960) (inferring that hazard was on floor for protracted period of time because it was "encrusted" around the edges).

Defendant argues that there is no evidence that it had any notice of a pink oily substance in the aisle of Register #5 the day of the fall. Defendant points out that the closed-circuit video shows customers in front of Plaintiff, as well as Plaintiff herself, successfully traverse the aisle without incident. Def's. Br. at 6.

Plaintiff responds that a rational juror could infer constructive notice because the spill was directly in front of the cash register and could have been easily discovered by the cashier. Pl's. Opp. at 16.

New Jersey courts have recognized that typically, constructive notice is "an issue of fact left for the jury's determination." *Bolchune*, 2016 WL 4699172 at *4. This Court finds that there is evidence from which a rational juror could infer that "the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" *Id.* A rational juror could find that a dangerous condition existed in the form of a pink oily substance on the floor near the cash registers. If so believed, this dangerous condition existed in the checkout aisle mere feet from the cashier. *Cf. Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 293 (1984) (noting that if "the defect is such that any reasonable

9

inspection would have been unavailing to disclose its existence, then defendant's failure to make such an extraordinary inspection does not constitute negligence or permit an inference of negligence"). Furthermore, the closed-circuit video shows the cashier activate and use her cellular phone during and immediately after Plaintiff's transaction. *See* Closed-Circuit Video, Def's. Ex. B at 00:25; 00:46.

When asked about daily cleaning and inspections procedures, manager Fabio Vaca said "[a]s a manager or different department supervisors or associates, if they see something on the floor, they know to pick it up if it's something that can be easily picked up and not hazardous to them, or call a manager if an incident happens or something that needs to be addressed." Vaca Dep., Pl.'s Ex. B, 16:5–10, ECF No. 22-2. From this, a rational juror could infer that Defendant was aware of the need to maintain a clean and safe premises, and delegated to its employees the duty to maintain reasonable diligence. A juror could find that reasonable diligence was not exercised when Defendant's employee failed to discover the hazard.

The facts of this case are similar to *Bolchune v. Shop-Rite Supermarkets, Inc.*, On appeal from Superior Court of New Jersey, Docket No. L-8535-11, 2016 WL 4699172 (N.J. Super. App. Div. Sept. 8, 2016). There, the plaintiff had fallen near the checkout aisle of a supermarket and claimed that she slipped on an unidentified wet brown substance. *Id.* at *1. There was no evidence in the record about what the substance was or how long it had been on the floor. The video camera footage showed only two minutes before, during, and after the fall and did not show the substance or when it became visible to store employees, if it existed. *Id.* The court held that a rational juror could find that the defendant had constructive notice, reasoning that "assuming the jury concludes that there was a foreign substance which caused plaintiff to slip and fall, the jury will then need to determine if the foreign substance was present long enough to

'have resulted in knowledge and correction had the defendant been reasonably diligent.'" *Id.* at *4 (quoting *Troupe v. Burlington Coat Factory Warehouse Corp.*, 443 N.J. Super 596, 602 (App. Div. 2016)). *But see Schwing-Dzuira v. Kohl's Dept. Stores, Inc.*, On appeal from Superior Court of New Jersey, L-1430-05, 2008 WL 833757, at *2 (N.J. Super. App. Div. Mar. 31, 2008) (affirming grant of summary judgment for defendant where plaintiff claimed to have slipped on crumbs near cashiers' lane but failed to introduce evidence regarding the length of time that the material was present).[3]

This Court agrees that the here, the question of constructive notice is "an issue of fact left for the jury's determination." *Bolchune*, 2016 WL 4699172 at *4; *see Tagliareni v. Walgreens*, On appeal from the Superior Court of New Jersey, Docket No. L-4077-11, 2015 WL 4742738, at *4 (N.J. Super. App. Div. Aug. 12, 2015) ("It is for a jury to determine whether the commercial property owner had actual or constructive notice of the dangerous condition." (quoting *Gray v. Caldwell Wood Prods., Inc.*, 425 N.J. Super. 496, 503 (App. Div. 2012)).

b. **Proximate causation**

Defendant argues that there is no evidence that any action or omission by it proximately caused plaintiff's injuries. Def's. Br. at 10. Defendant contends that there is no merit to the claim that it acted unreasonably by allowing the alleged pink oily substance to remain on the floor, and that there is no evidence of how long the substance as on the floor. Defendant also asserts that its

---

[3] In *Schwing-Dzuira*, the trial court had relied on *Nisivoccia*, 175 N.J. 559 and held that the mode of operation doctrine did not apply. *Schwing-Dzuira*, 2008 WL 833757, at *2. On this basis, the appellate court affirmed the finding that plaintiff had not shown constructive notice. *Id.* However, the issue of constructive notice is separate from the question of whether the mode of operation doctrine applies. *See Prioleau*, 223 N.J. at 262–63 (explaining mode of operation doctrine); *Bolchune*, 2016 WL 4699172 at *4 (finding mode of operation rule inapplicable but also finding sufficient evidence of constructive notice).

"managers, supervisors and associates remain vigilant for any possible hazard in areas accessible to customers" throughout the day. *Id.*

Plaintiff responds that there is sufficient evidence to find that Defendant's negligence was the proximate cause of Plaintiff's injury. Pl's. Opp. at 19. Plaintiff asserts that the video shows both Plaintiff and the cashier looking toward, pointing toward, and feeling the floor. Plaintiff asserts that she has always maintained that there was a substance on the floor causing her to fall.

"One of the underlying principles of tort law is that 'an actor's conduct must not only be tortious in character but it must also be a legal cause of the invasion of another's interest.'" *Reynolds v. Gonzalez*, 172 N.J. 266, 284 (2002) (quoting Restatement (Second) of Torts § 9 cmt. A (1965)). Plaintiffs must show "a proximate causal relation between defendant's negligence, if found by the jury, and the resulting injury." *Id.* (internal quotations omitted) (citing *Germann v. Matriss*, 55 N.J. 193, 205 (1970)). Proximate cause consists of "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Townsend*, 221 N.J. at 51.

This Court finds that there is sufficient evidence of proximate causation. Plaintiff stated in her deposition that she fell because of a pink oily substance on the ground. Betancourt Dep. at 59:15–60:7, Pl's. Ex. A, ECF No. 22-1. This statement is corroborated by the closed-circuit video in which she points to the ground near where she fell immediately after the accident occurred. Closed-Circuit Video at 1:11; 1:20. If a juror were to find that the pink oily substance existed and that Defendant's failure to remove it constitute a breach of its duty to inspect and maintain its premises, he could also find that breach to be a cause "which in the natural and continuous sequence, unbroken by an efficient intervening causes, produce[d] the result complained of." *Townsend*, 221 N.J. at 51.

### c. Plaintiff has submitted competent evidence of a pink oily substance.

Defendant finally contends that Plaintiff has not introduced competent evidence that there was a pink oily substance on the floor near the register. Def's. Br. at 11–12. Defendant specifically says that Plaintiff made no mention of a "pink oily substance" to any employee on the day of the accident, in any later disclosures, or in fact mention the substance at all until discovery in this litigation. Defendant argues that all of the accounts of the incidents contradict the presence of any substance on the floor, and that Plaintiff cannot rely on "conclusory and self-serving assertions" to defeat summary judgment. *Id.* (quoting *Puder v. Buechel*, 183 N.J. 428, 440–41 (2005)).

The Court rejects this argument. What Plaintiff did or did not say to any of Defendant's employees following the accident is a question of fact that cannot be properly resolved by the Court at this juncture. According to Defendant, Plaintiff stated that she had fallen as a result of a complication from knee surgery. According to Plaintiff, she told both the cashier Ms. Robinson and manager Mr. Vaca that she fell because of a pink oily substance on the floor. Moreover, Plaintiff's version of events is corroborated by the closed-circuit video in which she points to the ground immediately after the accident.

In *Martin v. Rutgers Casualty Insurance Co.*, 346 N.J. Super. 320, 323 (App. Div. 2002), upon which Defendant relies, the court disregarded the plaintiff's "self serving assertion" that she had a Texas driver's license when Texas motor vehicle records were to the contrary. *See also Puder*, 183 N.J. at 441 (disregarding attorney's testimony about judicial proceedings that was contradicted by judge's statements on the record). Unlike those cases, this is not an instance in which a party has submitted bare "self-serving assertions" which facially contradict all other available evidence, including evidence that is public record. Instead, this represents a case of

competing testimony, neither of which is inherently superior to the other. As discussed, a rational juror could find that there was a pink oily substance on the floor on the day in question.

## CONCLUSION

Defendant's motion for summary judgment is denied. An appropriate order follows.

DATE: 16 August 2018

William H. Walls
Senior United States District Court Judge